1

2

3

4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7    NAVJOT SINGH,                         Case No. 21-cv-03351-HSG

8                     Petitioner,          **ORDER DENYING PETITION FOR A
                                           WRIT OF HABEAS CORPUS;**
9           v.                             **DENYING CERTIFICATE OF
                                           APPEALABIILTY**
10   ATTORNEY GENERAL OF THE STATE
     OF CALIFORNIA, et al.,
11
                     Respondent.
12

13          Petitioner, a state prisoner incarcerated at Chuckawalla State Prison, has filed this *pro se*

14   action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the validity of a

15   conviction obtained against him in state court.  Dkt. No. 1.  Respondent has filed an answer.  Dkt.

16   Nos. 8-26 ("Answer").  Petitioner has filed a traverse.  Dkt. No. 27.  The Court has carefully

17   considered the briefs submitted by the parties.  For the reasons set forth below, the petition is

18   DENIED.

19                           **I.  PROCEDURAL HISTORY**

20          On November 1, 2016, a Santa Clara County jury convicted Petitioner of forcible rape,

21   rape in concert, rape by an intoxicating substance, rape of an unconscious victim, assault by means

22   likely to produce great bodily injury, and kidnapping to commit rape.  The jury also found various

23   kidnapping allegations to be true.  Petitioner was sentenced to thirty years to life in state prison,

24   consecutive to three years.[1]  CT 735-36, 745-47, 749, 751-52, 754, 782-88.  Petitioner appealed.

25   _____

26   [1] Petitioner was tried with a co-defendant, Gurminder Sekhon.  The jury found Sekhon guilty of
     rape in concert, rape by an intoxicating substance, rape of an unconscious victim, and kidnapping
27   to commit rape, and also found various kidnapping allegations to be true.  Answer, Ex. 10 at 8.
     The trial court sentenced Sekhon to 15 years to life in state prison.  Answer, Ex. 10 at 8 (Dkt. No.
28   26-4 at 191); *People v. Singh*, C No. H044283, 2019 WL 6871250, at *4 (Cal. Ct. App. Dec. 13,
     2019).

United States District Court
Northern District of California

1 Answer, Exs. 6, 9 (Dkt. No. 26-4 at 3-61, 153-182).  On December 13, 2019, the state appellate

2 court affirmed Petitioner's conviction and judgment.  Answer, Ex. 10 (Dkt. No. 26-4 at 183-216);

3 *People v. Singh*, C No. H044283, 2019 WL 6871250 (Cal. Ct. App. Dec. 13, 2019).  Petitioner

4 filed a petition for review.  Answer, Ex. 11 (Dkt. No. 26-4 at 217-292).  On March 18, 2020, the

5 California Supreme Court denied the petition for review.  Answer, Ex. 12 (Dkt. No. 26-4 at 293-

6 94).

7 On or about April 22, 2021,[2] Petitioner commenced the instant federal action for a petition

8 for a writ of habeas corpus.  Dkt. No. 1.

9 ## II.  BACKGROUND

10 The following factual and procedural background is taken from the December 13, 2019

11 opinion of the California Court of Appeal:[3]

12 ### I. BACKGROUND

13 #### A. Factual Summary
*1. The Events of March 21 and 22, 2015*

14 On the evening of March 21, 2015, Jane Doe drank a bottle of wine at the Willow Glen home
she shared with her boyfriend. Doe, an alcoholic, was in the midst of a relapse. She and her

15 boyfriend fought and, sometime late in the evening, she stormed out with an unopened bottle
of wine and her dog. She got in her car and drove to the end of the street, where she parked

16 and waited for her boyfriend to call. When he didn't she decided to go to a friend's house in
Los Altos. Along the way, she realized she didn't know how to get there. She pulled off

17 Highway 280 at El Monte and parked on the side of the road.

18 At 3:00 a.m. the following morning, Los Altos Police Officer Ryan Langone contacted Doe
because her car was obstructing the roadway. Her vehicle was parked half in the bike lane

19 and half in the roadway in the northbound lane of El Monte, about two miles from the Highway 280 exit. Langone saw an unopened bottle of wine in the car but did not observe

20 any indication that Doe was under the influence. She seemed tired and he thought she might
have been sleeping prior to his arrival. He advised her to move her vehicle and he drove

21 away.

22 Three hours later, Santa Clara County Sheriff's Deputy Ryan Omori contacted Doe because
her vehicle was again parked in the roadway. At that time, her car was parked on El Monte

23

24 ---

[2] The Court affords Petitioner application of the mailbox rule as to the filing of his habeas petition.

25 *Houston v. Lack*, 487 U.S. 266, 275-76 (1988) (*pro se* prisoner filing is dated from date prisoner
delivers it to prison authorities).  Petitioner gave his petition to prison authorities for mailing on or

26 about April 22, 2021.  Dkt. No. 1-1 at 2.
[3] The Court has independently reviewed the record as required by AEDPA.  *Nasby v. McDaniel*,

27 853 F.3d 1049, 1055 (9th Cir. 2017).  Based on the Court's independent review, the Court finds
that it can reasonably conclude that the state court's summary of facts is supported by the record

28 and that this summary is therefore entitled to a presumption of correctness, *Taylor v. Maddox*, 366
F.3d 992, 999–1000 (9th Cir. 2004), unless otherwise indicated in this order.

United States District Court
Northern District of California

at Highway 280. [FN 1] The car was partially in the lane that serves as the off-ramp from northbound 280. Omori saw an open bottle of wine on the floor behind the front passenger seat; he estimated that it was 90 percent full. Doe told him she had just opened the bottle and had a drink from it. Omori had Doe exit the vehicle. He checked her eyes for horizontal and vertical gaze nystagmus, which are indicative of intoxication. He observed neither. According to Omori, Doe's balance was steady, her speech was not slurred, her eyes were not red or watery, and she displayed no other signs of intoxication. Despite the absence of any symptoms of alcohol intoxication, Omori suggested that Doe have someone come pick her up. He made that suggestion because she was "incoherent" and "evasive" during their interaction. When Doe was unable to reach anyone on her cell phone, Omori asked for permission to call her a cab. She agreed. An orange cab arrived and Doe got in. Omori, "satisfied that she was taking [his] recommendation," left the scene.

> FN 1: Doe testified that she did not recall moving her vehicle between the two police contacts and that she was parked safely on the side of the road.

Doe testified that the cab driver, whom she identified as Singh, would not let her bring her dog in the cab so she left the dog in her car. Doe wanted to drive herself home. Therefore, she told Singh she would pay him $10 to pull around the corner, wait for the police to leave, and return her to her car. He agreed. While they waited, Singh suggested that they go get a drink. Doe said yes. Singh drove to a CVS, which was closed, then to a Safeway. Doe went inside because she wanted to buy some food for her children, who would be visiting her that day. She also picked out a bottle of Hennessy, at Singh's request. Doe was not permitted to purchase the alcohol because she did not have her ID. She went outside and got Singh, who came into the store and bought the items. A receipt obtained from the Safeway shows the transaction was completed at 7:54 a.m. Surveillance video from the Safeway was played at trial. That video depicts Doe attempting to complete the transaction, followed by Singh and Doe together purchasing the items.

Doe and Singh returned to the cab and both sat in the backseat. Doe took a sip from the bottle of Hennessy and a sip from a bottle of Diet Coke. Doe testified that she remembered only bits and pieces of the day from that point. Her next memory was of being on her back in the backseat with Singh on top of her with his penis inside her vagina. She was unable to move her arms normally because they felt heavy. She remembers slapping Singh's head and telling him to get off her; he responded by yelling profanity at her. At some point, he hit her head with his head. Doe testified that Singh also put his fingers in her vagina and his penis in her anus. She testified that she did not consent to any sexual contact with Singh.

Doe recalled that a second man, whom she identified as Sekhon, got into the cab at some point. Doe testified that Sekhon also had nonconsensual vaginal intercourse with her in the back of the cab. Singh then raped her again. At some point, the men held a bottle of Corona beer to her mouth and forced her to drink.

Surveillance video from outside a 7-Eleven was admitted into evidence and played at trial. That video depicts an orange cab parking outside the 7-Eleven shortly after 2:00 p.m., Singh walking inside and returning with what appears to be a 12-pack of beer.

In the evening, Doe regained the ability to move. While the cab was driving, she started yelling for help because there were other vehicles around. Sekhon, who was in the backseat with her, tried to restrain her as she attempted to open the door. Singh stopped the cab, got out, threw Doe out of the cab, and drove away.

Multiple witnesses testified that, at about 6:00 p.m. on March 22, 2015, they saw a cab stop abruptly near Wolfe and Kifer in Sunnyvale. Witnesses observed the driver get out, struggle with a screaming female passenger, shove that female passenger to the ground, and speed away. The rear windows of the cab were tinted dark. According to witnesses, the woman—

3

Doe—was crying and saying that she had been raped. Among the witnesses were paramedics driving down Wolfe in their ambulance. They contacted police with the cab's number and responded to the scene. Doe told them that two men had beaten and sexually assaulted her and that she had lost consciousness.

Police pulled the cab over a short time later.

*2. Physical, GPS, and Cell Phone Evidence*
Officers found Doe's wallet in the front seat of the cab. They found a Corona bottle cap in the backseat. In the trunk they found a 12-pack of Corona with a single bottle left and some groceries.

A Garmin GPS device was found in the cab as well. Data from the Garmin device showed that the cab arrived at a Safeway in Mountain View at 7:36 a.m. on March 22, 2015. It remained in that location until 8:53 a.m., at which point it moved to a nearby Target, where it parked on the side of the building away from the entrance. According to the Garmin GPS data, the cab did not move again until 12:44 p.m. It then drove to a location near the home defendants shared on Agate Drive, and then to 100 San Lucar Court, where it arrived at 1:19 p.m. The cab stayed at the San Lucar Court location, which is in an industrial area, until 2:02 p.m., at which time the cab drove to a 7-Eleven. It remained there for a few minutes and then returned to the San Lucar Court location, where it stayed until 6:02 p.m.

Cell phone data showed that Singh called Sekhon at 12:20 p.m. and again at 1:02 p.m. and 1:05 p.m.

Aura Cardona, a Sexual Assault Response Team (SART) nurse, performed a SART exam on Doe in the early morning hours of March 23, 2015. Cardona testified that Doe had abrasions on her right leg above her knee, a bruise on her left buttock, scratches or scrapes on her abdomen, a large raised area on the right side of her temple, and an abrasion on the bridge of her nose. Doe did not have any vaginal tearing or bleeding. Cardona explained that the absence of such injuries does not rule out rape because the vaginal canal is elastic, moist, and vascular and those characteristics prevent injury.

*3. DNA Evidence*
Brooke Barloewen, supervising criminalist at the Santa Clara Criminal Laboratory, testified as an expert in DNA analysis. Sperm was present on a vaginal swab taken from Doe. There were multiple contributors to the DNA on that swab and it was very likely that Doe and Singh were two of those contributors. Doe's DNA was found on penile and scrotal swabs taken from Singh. There were multiple contributors to the DNA found on a scrotal swab taken from Sekhon and it was very likely that Doe and Sekhon were two of those contributors.

*4. Toxicology Evidence*
The parties stipulated that Doe's blood was drawn at 8:03 p.m. on March 22 and that her blood alcohol content (BAC), at that time, was 0.17. Alice King, a criminalist and supervisor in the toxicology unit at the Santa Clara County Crime Laboratory, opined that Doe's BAC would have been 0.21 two hours earlier, at about 6:00 p.m. King testified that the "majority of ... people" would be "staggering" with a BAC of 0.21, but that the symptoms of alcohol intoxication would be less apparent in someone with a high tolerance for alcohol.

According to King, Doe's BAC should have been zero based on her account of how much she drank in the preceding 24 hours. Bill Posey, who testified for the prosecution as an expert in forensic toxicology, likewise opined that Doe's BAC should have been zero had she consumed only the wine, Hennessy, and Corona that she testified to ingesting.

A private laboratory, Central Valley Toxicology, also analyzed Doe's blood and urine

samples. Her urine contained 50 milligrams of GHB per liter. Expert forensic toxicologist Posey testified that while GHB naturally occurs in all people, the amount present in Doe's urine was too high to be consistent with natural occurrence. Posey further testified that GHB, which is not available by prescription in the United States, is an illicit recreational drug. It is a central nervous system depressant that causes memory loss, loss of muscle control, and—at high doses—unconsciousness. According to Posey, GHB "can totally incapacitate an individual in a short period of time.... [T]ypically, within th[e] first three to six hours, the [person] is not going to be up moving around a lot" and will be like a "floppy baby."

The parties stipulated that Singh's blood was drawn at 11:10 p.m. on March 22; his BAC at that time was 0.10. King opined that Singh's BAC would have been 0.20 at about 6:00 pm. She said that someone with a high alcohol tolerance could drive a car with that BAC.

The parties stipulated that Sekhon's blood was drawn at 10:30 p.m. on March 22; his BAC at that time was 0.24. King opined that Sekhon's BAC would have been 0.33 at about 6:00 pm. She testified that at that BAC level most people are "severe[ly] intoxicat[ed]." However, she opined that someone with a high tolerance could function normally with a BAC of .33.

### B. Procedural History

The Santa Clara County District Attorney filed a first amended information on October 5, 2016, charging both defendants with penetration by a foreign object in concert (Pen. Code, § 264.1; count 4) [FN 2]; rape in concert (§ 264.1; count 5); rape of an intoxicated person (§ 261, subd. (a)(3); count 6); rape of an unconscious person (§ 261, subd. (a)(4); count 7); assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4); count 8); and kidnapping to commit a sexual offense (§ 209, subd. (b)(1); count 9). Counts 4 and 5 included kidnapping allegations (§ 667.61, subds. (a)-(e)). Counts 6 and 7 included allegations that defendants kidnapped Doe for the purpose of committing rape (§ 667.8, subd. (a)). The first amended information also charged Singh with forcible rape (§ 261, subd. (a)(2); count 1); forcible sexual penetration (§ 289, subd. (a)(1); count 2); and forcible sodomy (§ 286, subd. (c)(2)(A); count 3). Each of those three counts included kidnapping allegations (§ 667.61, subds. (a)-(e)). [FN 3]

> FN 2: All further statutory references are to the Penal Code unless otherwise noted.

> FN 3: The first amended complaint also charged two other counts, which were later dismissed at the prosecutor's request.

The case proceeded to a joint trial in October 2016. The jury began deliberating on the morning of October 31, 2016 and returned its verdicts the following afternoon. The jury found Singh guilty of rape (count 1), rape in concert (count 5), rape of an intoxicated person (count 6), rape of an unconscious person (count 7), assault by means of force likely to produce great bodily injury (count 8), and kidnapping to commit a sexual offense (count 9). Jurors acquitted Singh of forcible sexual penetration (count 2), forcible sodomy (count 3), and penetration by a foreign object in concert (count 4). The jury found Sekhon guilty of rape in concert (count 5), rape of an intoxicated person (count 6), rape of an unconscious person (count 7), and kidnapping to commit a sexual offense (count 9). The jury acquitted Sekhon of penetration by a foreign object in concert (count 4) and assault by means of force likely to produce great bodily injury (count 8). Jurors found not true allegations associated with counts 1 and 5 that defendants kidnapped Doe and moved her in a manner that substantially increased the risk of harm to her for purposes of section 667.61, subdivisions (a) and (d). Jurors found true allegations associated with counts 1 and 5 that defendants kidnapped Doe for purposes of section 667.61, subdivisions (e)(1) and (e)(7). And jurors found true allegations associated with counts 6 and 7 that defendants kidnapped Doe for the purpose of committing rape for purposes of section 667.8.

At a December 16, 2016 sentencing hearing, the trial court sentenced Singh to an aggregate

United States District Court
Northern District of California

term of 30 years to life, consecutive to three years. At the same hearing, the court sentenced Sekhon to a total prison term of 15 years to life.

*Singh*, 2019 WL 6871250, at \*1–\*4.

## III. DISCUSSION

### A.    Standard of Review

A petition for a writ of habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Greene v. Fisher*, 565 U.S. 34, 38 (2011). Additionally, habeas relief is warranted only if the constitutional error at issue "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Penry v. Johnson*, 532 U.S. 782, 795 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence. "[C]learly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." *Id.* at 405–06. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court

6

identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003). "Under § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

The state court decision to which Section 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091–92 (9th Cir. 2005). Petitioner first raised the claims presented in the instant federal habeas petition in his direct appeal. Answer, Exs. 6, 9 (Dkt. No. 26-4 at 3-61, 153-182), The California Court of Appeal denied these claims in a reasoned opinion. *People v. Singh*, C No. H044283, 2019 WL 6871250 (Cal. Ct. App. Dec. 13, 2019). In his petition for review to the California Supreme Court, Petitioner raised all the claims raised in his direct appeal except for this claim regarding the exclusion of the victim's methamphetamine-related arrest a few months prior to trial. Answer, Ex. 11 (Dkt. No. 26-4 at 217-292). The California Supreme Court summarily denied the petition. Answer, Ex. 12 (Dkt. No. 26-4 at 293-94). Accordingly, in addressing the instant federal habeas petition, the Court reviews the California Court of Appeal's opinion.

**B.     Petitioner's Claims**

The petition alleges the following claims for federal habeas relief: (1) insufficient evidence to support the kidnapping conviction; (2) ineffective assistance of trial counsel for failure to seeking admission of a statement made by the victim that was relevant to the issue of consent; (3) the trial court erred in excluding evidence that the victim had stated that she was "going to get laid" before she left the residence; (4) the trial court erred in excluding expert testimony regarding

whether the victim blacked out or was unconscious; (5) the trial court erred in excluding evidence that the victim had falsely accused her ex-husband Joel Levya of using violence against her; and (6) the trial court erred in refusing to allow impeachment of the victim with her involvement in a drug offense three months prior, thereby denying Petitioner his Sixth Amendment right of confrontation. *See generally* Dkt. No. 1 at 18-23; Dkt. No. 7.

### 1. Sufficiency of the Evidence

Petitioner argues that the evidence was insufficient to support the kidnapping conviction because there was no evidence that Jane Doe was moved by force or fear or that Jane Doe was moved any distance without her consent. Dkt. No. 1 at 19, 21; Dkt. No. 27 at 6-13. Petitioner argues that the evidence shows that Jane Doe willingly entered Petitioner's car for the purpose of purchasing and consuming alcohol; she lost consciousness at some point; and then, for the remainder of the day, drifted in and out of consciousness. Dkt. No. 27 at 7. Petitioner acknowledges that California caselaw has held that where the victim is incapable of consent, Cal. Penal Code § 209(b)(1) is violated when a defendant takes and caries away an incapacitated person to commit rape even if the defendant uses only the force necessary to accomplish such a taking and carrying away, citing to *People v. Daniels*, 176 Cal. App. 4th 304, 327 (2009). Petitioner argues that the Court should "overrule" *Daniels* because the holding in *Daniels* is inconsistent with the plain language of Cal. Penal Code § 209(b)(1), which defines kidnapping as carrying away a person by force or by instilling fear, and because *Daniels* has essentially rewritten Cal. Penal Code § 209(b)(1) to eliminate the requirement of force or fear. Dkt. No. 27 at 9-10. Petitioner further argues that Jane Doe was capable of giving consent when she entered his car and did give that consent because she wanted to get alcohol. Petitioner points to the following as evidence of Jane Doe being capable of, and giving, consent: Jane Doe ordered Petitioner to drive around until the police left so that she could get in her car and drive herself home; Jane Doe got out of Petitioner's car and willingly reentered it multiple times as they searched for alcohol; and Petitioner and Jane Doe sought out and obtained alcohol. Petitioner also argues that, to the extent that Respondent is arguing that he enticed Jane Doe into the car under false pretenses, asportation by fraud does not constitute general kidnapping under California law. Finally, Petitioner argues

that there was insufficient evidence that Jane Doe was mentally impaired.  *See generally* Dkt. No.

27 at 6-13.  Respondent argues that the state court denial of this claim was not contrary to, or an

unreasonable application of, clearly established Supreme Court law because the denial was

consistent with state law definitions of kidnapping.  Dkt. No. 26-1 at 11-26.

The California Court of Appeal denied the claim as follows:

### A. Sufficiency of the Evidence to Support the Kidnapping Enhancements and Convictions for Kidnapping to Commit a Sexual Offense

Defendants were convicted of kidnapping to commit rape, in violation of section 209, subdivision (b)(1), as charged in count 9. And the jury found true allegations that defendants kidnapped Doe in violation of section 207, 209, or 209.5 (§ 667.61, subds. (e)(1) & (e)(7)) and that they kidnapped Doe in violation of section 207 or 209 for the purpose of committing rape (§ 667.8). Defendants argue that these convictions and true findings are not supported by sufficient evidence. In particular, they say there was insufficient evidence to support the force or fear and lack of consent elements of kidnapping. Separately, Sekhon argues that the findings that he kidnapped Doe for the purpose of committing rape (§ 667.8) are unsupported by the evidence because there is insufficient evidence that he participated in any kidnapping *before* committing rape. And Sekhon argues that the finding that he kidnapped Doe for purposes of section 667.61, subdivision (e)(1) is unsupported by substantial evidence because there is no evidence of a factual nexus between the kidnapping and the sex offense.

*1. Standard of Review and Legal Principles*
In evaluating sufficiency of the evidence challenges, "we examine the record in the light most favorable to the judgment to ascertain whether it is supported by substantial evidence. In other words, we determine whether a rational trier of fact could have found that the prosecution sustained its burden of proving the elements of the sentence enhancement [or offense] beyond a reasonable doubt." (*People v. Delgado* (2008) 43 Cal.4th 1059, 1067.) Substantial evidence is "evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Albillar* (2010) 51 Cal.4th 47, 59-60.)

To prove the crime of simple kidnapping in violation of section 207, subdivision (a), "'the prosecution must prove three elements: (1) a person was unlawfully moved by the use of physical force or fear; (2) the movement was without the person's consent; and (3) the movement of the person was for a substantial distance.'" (*People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1368.) Section 209, subdivision (b)(1) provides that "[a]ny person who kidnaps or carries away any individual to commit ... rape ... shall be punished by imprisonment in the state prison for life with the possibility of parole." That provision's use of the words "kidnaps or carries away" has been construed as incorporating the elements of section 207. (*People v. Daniels* (2009) 176 Cal.App.4th 304, 327 (*Daniels*).)

*2. There was Sufficient Evidence of the Use of Force or Fear*
With respect to the force or fear element, this court held in *Daniels* that "section 209, subdivision (b)(1) is violated when a defendant takes and carries away an incapacitated person to commit rape even if the defendant uses only the force necessary to accomplish such a taking and carrying away." (*Daniels, supra*, 176 Cal.App.4th at p. 333.)

Under *Daniels*, there plainly is sufficient evidence of the force or fear element. GPS evidence established that the cab changed locations a number of times throughout the day.

Eyewitness testimony and surveillance video support the inference that Doe and Singh were in the cab as it traveled around Mountain View and Sunnyvale. And eyewitness testimony, as well as GPS and cell phone evidence, support the inference that Sekhon was in the cab for most of the afternoon, including while it traveled from the location near Agate Drive to San Lucar Court, from that location to 7-Eleven and back again, and then to the location where Singh threw Doe out of the cab. Substantial evidence supports the inference that Doe was incapacitated beginning shortly after she and Singh returned to the cab from Safeway until shortly before Singh threw her out of the cab. Specifically, that inference is supported by Doe's testimony about gaps in her memory and her inability to move her arms, the toxicology evidence that GHB was found in her system, and the expert testimony about the incapacitating effects of that drug.

Defendants argue that we should decline to follow *Daniels* because, in their view, it improperly rewrote section 209 to remove the force or fear element. *Daniels* "relaxe[d] but [did] not eliminate the force requirement" in order to effectuate the purpose of section 209 and avoid an absurd result. (*Daniels, supra*, 176 Cal.App.4th at p. 332.) In doing so, it relied on California Supreme Court precedent relaxing the force requirement of section 207 in cases involving infants and small children. (*Daniels, supra*, at pp. 330-331, discussing *In re Michele D.* (2002) 29 Cal.4th 600.) We agree with the reasoning of *Daniels* and decline to deviate from it. For the foregoing reasons, we conclude there was sufficient evidence of force or fear.

*3. There was Sufficient Evidence of Lack of Consent*
Defendants next contend that there was insufficient evidence that Doe did not consent to the movements. That argument is baseless. As defendants highlight, Doe willingly entered the cab, rode to Safeway, and reentered the cab. But, as discussed above, the evidence strongly supports the inference that she was incapacitated for all of the subsequent movements such that she was unable to consent to them. (*Daniels, supra*, 176 Cal.App.4th at p. 333.) Where "'the victim's initial cooperation is obtained without force or the threat of force, kidnap[p]ing [nevertheless] occurs *if the accused* "'*subsequently restrains his victim's liberty by force* and compels the victim to accompany him further.'"'" (*People v. Hovarter* (2008) 44 Cal.4th 983, 1017 (*Hovarter*).) Substantial evidence supported the conclusion that is precisely what occurred here.

*Singh*, 2019 WL 6871250, at *4–*6 (emphasis in original).

### a.    Legal Standard

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). In reviewing insufficiency of the evidence claims, the federal habeas court determines only whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The Supreme Court has emphasized that sufficiency of the evidence "claims face a high bar in federal habeas proceedings . . ." in that they are subject to two layers of judicial deference. *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (finding that Court of Appeals

United States District Court
Northern District of California

"unduly impinged on the jury's role as factfinder" and failed to apply deferential *Jackson* standard when it engaged in "fine-grained factual parsing" to find that evidence insufficient to support conviction). First, a "'reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.'" *Id.* (citing *Cavazos v. Smith*, 565 U.S. 1, 2 (2011)). "'*Jackson* requires a reviewing court to review the evidence 'in the light most favorable to the prosecution[,]' . . . [which] means a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, 558 U.S. 120, 132–33 (2010) (citing *Jackson*, 443 U.S. at 319, 326)). Second, "'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable.'" *Coleman*, 566 U.S. at 651 (citing *Cavazos*, 565 U.S. at 2).

Insufficiency of the evidence claims are reviewed by looking at the elements of the offense under state law. *Jackson*, 443 U.S. at 324 n.16; *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (in determining whether sufficient evidence supports state law statutory enhancement, federal courts are bound by "state court's interpretation of state law"). If there is evidence from which the jury could infer guilt, the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality. *Coleman*, 566 U.S. at 656.

### c.    Analysis

Having carefully reviewed the record, the Court concludes that the state court's rejection of this claim was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, and was not an unreasonable application of, or contrary to, Supreme Court precedent.

As required by the Supreme Court, the Court reviews the insufficiency of the evidence claim by looking at the elements of the offense under state law. *Jackson*, 443 U.S. at 324 n.16. California law holds that a defendant has committed kidnapping within the meaning of Cal. Penal

11

Code § 209(b)(1) when the defendant "takes and carries away an incapacitated person to commit rape even if the defendant uses only the force necessary to accomplish such a taking and carrying away," *People v. Daniels*, 176 Cal. App. 4th 304, 333 (2009), and where, even if the victim's initial cooperation is obtained without force or the threat of force, the accused subsequently restrains the victim's liberty by force, not necessarily physical, and compels the victim to accompany the accused further, *People v. Hovarter*, 44 Cal. 4th 983, 1018 (Cal. 2008).  The Court cannot overrule *Daniels*, as requested by Petitioner.  Federal courts are bound by a state court's interpretation of state law. *Bradshaw*, 546 U.S. at 76 ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

Applying the standard set forth in *Jackson*, the only question is whether the jury's conclusion that Petitioner moved Jane Doe by force or fear under *Daniels* and that there was lack of consent under *Hovarter* was so insupportable as to fall below the threshold of bare rationality. *Coleman*, 566 U.S. at 656.  The jury's determination that Jane Doe's testimony was credible is entitled to near-total deference under *Jackson*. *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004).

The state court's denial of this claim was not based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. There was sufficient evidence from which a jury could reasonably infer that Petitioner was guilty of kidnapping as defined by *Daniels* and *Hovarter* because there was sufficient evidence that Jane Doe was incapacitated and that Petitioner moved her to commit rape.  Petitioner incorrectly focuses on Jane Doe's consent to the initial events of getting in Petitioner's cab, driving around to find alcohol, and getting in and out of the car as they searched for alcohol. *Hovarter* clearly holds that under state law, a kidnapping can occur even where the victim consented initially.  Although Jane Doe consented to the initial events – getting into Petitioner's car for a quick drink, agreeing to go to Safeway and buy alcohol to drink in the car, voluntarily returning to the car, and drinking two sips of Hennessey – Jane Doe testified that she did not consent to any of actions after taking the sips of

12

Hennessey.  Jane Doe testified to the following.  When she agreed to have a drink with Petitioner, she had no intention of staying with Petitioner for longer than a quick drink because she wanted to get home to see her children.  While she consented to moving away from the front of the Safeway to have the drink, she did not consent to any movement beyond that.  She remembered nothing after the two sips of Hennessey until she became aware of Petitioner on top of her and having sex with her.  At that point, she realized that she was unable to move her body.  She wanted to stop the sexual activity but felt strangely numb and unable to move her arms.  She kept blacking out and could not stay awake.  She recalled Petitioner and Sekhon pouring Corona into her mouth.  Jane Doe did not consent to any of the movements to Agate Drive, Lucar Court, and the 7-Eleven.  Petitioner hit her forehead with his head and cursed at her.  She asked to go home at some point.  Jane Doe also testified that, after 8 p.m. on March 21, 2015, she had nothing to drink other than a few sips of her wine bottle and two sips of Hennessey.  RT 524-26, 532-38, 542, 628-38, 667, 687, 670, 711, 740-42, 752.  There was evidence supporting Jane Doe's testimony that she did not consent to the movement after moving away from the front of the Safeway.  There was a Safeway receipt indicating that Jane Doe purchased ice cream and frozen pizza, items which would need to be refrigerated soon after purchase, supporting her testimony that she intended only to have a quick drink with Petitioner.  A bottle of Corona was found in Petitioner's car, indicating that her recollection of events was generally accurate.  There was also evidence that GHB was found in Jane Doe's bloodstream, that GHB affects a person's ability to recall events occurring after ingesting the GHB, that Jane Doe denied voluntarily or knowingly ingesting GHB that day, and that Jane Doe denied having ever taken GHB previously, supporting her testimony that she was unable to move and was incapable of consent after the two sips of Hennessey.  RT 397, 407, 410, 432, 1128, 1146, 1150.

The state court's denial of this claim was also not contrary to, nor an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.  Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the kidnapping conviction beyond a reasonable doubt.  *Jackson*, 443 U.S. at 319.  Clearly established Federal law holds that this Court may not overturn

the state court decision rejecting this sufficiency of the evidence challenge when, as is the case here, a rational trier of fact could have agreed with the jury and the state court denial was not objectively unreasonable.  *Coleman*, 566 U.S. at 651.

Habeas relief is denied on this claim.

### 2.    Evidentiary Error

Petitioner argues that the trial court erred when it excluded the following evidence: Jane Doe's statement to her boyfriend before she left the residence that she was "going to get laid;" expert testimony regarding whether Jane Doe blacked out or was unconscious; and evidence that Jane Doe had falsely accused her ex-husband Joel Levya of using violence against her.  Dkt. No. 1 at 21-23.

The California Court of Appeal denied these claims[4] as follows:

**B. Claims of Evidentiary Error**
Defendants argue that the trial court erred in excluding four pieces of evidence they sought to admit at trial. We address each in turn.

*1. Legal Principles and Standard of Review*
Only relevant evidence is admissible. (Evid. Code, § 350.) The Evidence Code defines "relevant evidence" broadly as "evidence ... having *any tendency in reason* to prove or disprove any disputed fact that is of consequence to the determination of the action." (*Id.*, § 210, italics added.) "'[T]he trials court has broad discretion to determine the relevance of evidence.'" (*People v. Tully* (2012) 54 Cal.4th 952, 1010.) A trial court has the discretion to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) "On appeal, 'an appellate court applies the abuse of discretion standard of review to any ruling by a trial court on the admissibility of evidence.'" (*Hovarter, supra*, 44 Cal.4th at pp. 1007-1008.) A trial court abuses its discretion when its ruling falls outside the bounds of reason. (*People v. Benavides* (2005) 35 Cal.4th 69, 88.)

"[W]e review errors in the application of the 'ordinary rules of evidence' ... under the

---

[4] On direct appeal, Petitioner challenged the exclusion of four pieces of evidence as evidentiary error: the exclusion of Jane Doe's "going to get laid" statement, expert testimony regarding alcohol-induced blackouts, Jane Doe's false accusation of violence against her ex-husband, and Jane Doe's arrest for being under the influence of methamphetamine.  *See* Answer, Ex. 6 (Dkt. No. 26-4 at 2-61).  In his petition for review to the California Supreme Court, Petitioner only challenged the exclusion of the first three pieces of evidence as evidentiary error.  *See* Answer, Ex. 11 (Dkt. No. 26-4 at 217-92).  In the instant habeas petition, Petitioner challenges the exclusion of the first three pieces of evidence as evidentiary error and challenges the exclusion of the fourth piece of evidence (Jane Doe's arrest for being under the influence of methamphetamine) as a violation of the right to cross-examine the witness and as an abuse of discretion under state law. Dkt. No. 1 at 22-23.  The Court construes the claim regarding exclusion of Jane Doe's arrest for being under the influence of methamphetamine as a Confrontation Clause claim.  Dkt. No. 7 at 2.

14

standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836. [Citation.] Under this standard, if a trial court erroneously excludes evidence, a defendant must show on appeal that it is reasonably probable he or she would have received a more favorable result had that evidence been admitted. [Citations.]" (*People v. Ghebretensae* (2013) 222 Cal.App.4th 741, 750.)

*2. Jane Doe's "Going to Get Laid" Statement*
*a. Background*
Singh moved to introduce a statement Doe made to her boyfriend before she stormed out of the house on the Saturday night preceding the assaults—namely, that she was "going to get laid." Singh argued that the statement was not evidence of Doe's sexual conduct, such that the rape shield law (Evidence Code section 1103) and its exception (Evidence Code section 782) did not apply, and that it was admissible even if those statutes governed. Singh maintained that the statement was relevant to Doe's credibility and state of mind. Sekhon joined the motion. The prosecutor opposed the motion, arguing orally that defendants really were trying to introduce the statement to show consent and that it would be improper to introduce the statement for that purpose. The trial court excluded the statement under Evidence Code section 1103, reasoning that "the prejudicial effect of the jury interpreting that statement as possible consent to the sexual acts outweighs the probative value of the statement for impeachment in that it would allow the jury to speculate that there was consent as opposed to merely an angry statement [made] to a boyfriend with whom she was arguing." Defendants now say that was error on the theory that the statement was not sexual conduct evidence such that Evidence Code section 1103 did not apply.

*b. Additional Legal Principles*
"Evidence of the sexual conduct of a complaining witness is admissible in a prosecution for a sex-related offense only under very strict conditions. A defendant may not introduce evidence of specific instances of the complaining witness's sexual conduct, for example, in order to prove consent by the complaining witness. (Evid. Code, § 1103, subd. (c)(1).) Such evidence may be admissible, though, when offered to attack the credibility of the complaining witness and when presented in accordance with the following procedures under section 782: (1) the defendant submits a written motion 'stating that the defense has an offer of proof of the relevancy of the sexual conduct of the complaining witness proposed to be presented and its relevancy in attacking the credibility of the complaining witness' (*id.*, § 782, subd. (a)(1)); (2) the motion is accompanied by an affidavit, filed under seal, that contains the offer of proof (*id.*, subd. (a)(2)); (3) '[i]f the court finds that the offer of proof is sufficient, the court shall order a hearing out of the presence of the jury, if any, and at the hearing allow the questioning of the complaining witness regarding the offer of proof made by the defendant' (*id.*, subd. (a)(3)); and (4) if the court, following the hearing, finds that the evidence is relevant under Evidence Code section 780 and is not inadmissible under section 352, then it may make an order stating what evidence may be introduced by the defendant and the nature of the questions to be permitted. (*Id.*, § 782, subd. (a)(4).)" (*People v. Fontana* (2010) 49 Cal.4th 351, 362.)

This court has construed "sexual conduct, as that term is used in [Evidence Code] sections 782 and 1103 [to] encompass[ ] any behavior that reflects the actor's or speaker's willingness to engage in sexual activity." (*People v. Franklin* (1994) 25 Cal.App.4th 328, 334.) Thus, in *People v. Casas* (1986) 181 Cal.App.3d 889, 895, this court concluded that the victim's "statement that she offered to have sexual intercourse with [a man other than the defendant] for money ... [fell] within the ambit of [Evidence Code] sections 782 and 1103" because it reflected "the speaker's willingness to engage in sexual intercourse."

We review issues of statutory interpretation de novo. (*People v. Tidwell* (2016) 246 Cal.App.4th 212, 216.) "A trial court's ruling on the admissibility of prior sexual conduct will be overturned on appeal only if appellant can show an abuse of discretion." (*People v.*

*Chandler* (1997) 56 Cal.App.4th 703, 711.)

*c. The Trial Court Did Not Err in Applying Evidence Code Sections 1103 and 782*
Doe's statement that she was "going to get laid" indicated a willingness to engage in sexual activity. Therefore, the trial court was correct to apply Evidence Code sections 1103 and 782 in determining its admissibility. Defendants do not argue that the trial court abused its discretion in excluding the evidence under those statutes, so we need not reach that issue.

. . .

*3. Expert Testimony Regarding Alcohol-Induced Blackouts*
*a. Background*
Defendants sought to introduce expert testimony regarding alcohol-induced blackouts. Defendants' offer of proof indicated that the expert, a psychiatrist, would testify that an alcohol-induced blackout occurs during excessive drinking or a rapid blood alcohol increase and is defined as amnesia or memory loss for all or part of a drinking episode. The expert would have further testified that a person in an alcohol-induced blackout is conscious and interacting with his or her environment but is not creating memories. The expert would opine that Doe's account of memory gaps on the day of the alleged sexual assaults combined with her high BAC were consistent with an alcohol-induced blackout. The prosecutor opposed the request, arguing that the expert testimony should be excluded under Evidence Code section 352. The trial court excluded the expert's testimony under Evidence Code section 352.

*b. Additional Legal Principles*
Expert opinion testimony is admissible only if it is "[r]elated to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." (Evid. Code, § 801, subd. (a).) "The trial court has broad discretion in deciding whether to admit or exclude expert testimony [citation], and its decision as to whether expert testimony meets the standard for admissibility is subject to review for abuse of discretion." (*People v. McDowell* (2012) 54 Cal.4th 395, 426.) "[A] ruling on admissibility of [expert testimony] under Evidence Code section 352 is [likewise] reviewed under an abuse of discretion standard." (*People v. Moore* (2011) 51 Cal.4th 386, 406.) "[W]hen the proposed expert testimony rests on an assumption without any support in the trial evidence, the court ... abuse[s] its discretion in admitting it. Such testimony has little or no probative value, bears the potential to mislead the jury into accepting the unsupported assumption and drawing from it unwarranted conclusions, and thus cannot significantly 'help the trier of fact evaluate the issues it must decide.'" (*Ibid.*)

*c. Analysis*
The expert's opinion that Doe was in an alcohol-induced blackout was inconsistent with the evidence, such that it had little or no probative value. As such, the trial court did not abuse its discretion in excluding the testimony.

The expert would have testified that an alcohol-induced blackout occurs during excessive drinking or a rapid blood alcohol increase. But there is no evidence that Doe engaged in excessive drinking or drank a significant amount of alcohol in a brief period of time preceding her first memory loss, which occurred shortly after the trip into Safeway. Santa Clara County sheriff's deputy Ryan Omori testified that Doe exhibited no signs of alcohol intoxication at 6:00 a.m. Doe testified that prior to her first memory gap she drank a bottle of wine the night before and less than a glass of wine and a couple of sips of Hennessy that morning. Certainly, evidence that Doe's BAC was 0.21 at about 6:00 p.m. supports an inference that she drank more than she recalled (or admitted) at some point that day. But it does not support an inference that she was blackout drunk at 8:00 a.m. when her first memory lap occurred.

16

The expert also would have testified that a person experiencing a blackout may appear to engage in consensual sexual activity. But there is no evidence that Doe appeared to consent to the sexual acts. Instead, she testified that she was unable to move her arms normally, that she told Singh to get off of her, and that she slapped him in the head.

Significantly, the expert's opinion failed to account for the GHB found in Doe's system. Indeed, his proposed testimony failed to mention that evidence and it is unclear whether he considered it—and if he did not, how it would have affected his opinion.

Even assuming the trial court erred in excluding the expert's testimony, that error was harmless. As discussed above, the theory that Doe suffered from an alcohol-induced blackout and engaged in consensual sex with defendants is unsupported by the evidence. Accordingly, it is not reasonably probable that the verdicts would have been any different had the expert been permitted to testify.

*4. Evidence Doe Had Falsely Accused Her Ex-Husband of Violence*
*a. Background*
Singh moved in limine to introduce evidence that Doe had falsely accused her ex-husband of domestic violence. The prosecutor moved in limine to exclude that evidence, arguing that it would require re-litigating the divorce and thus would be too time consuming. The trial court excluded the evidence, which defendants argue was an abuse of discretion.

*b. Analysis*
Defendants claim they could have established that Doe's accusations against her ex-husband were false using the ex-husband's statements, made under penalty of perjury, to that effect. They argue that, if proved false, the prior accusations were highly probative of Doe's credibility, which was a central issue at trial. The Attorney General disputes that defendants proved the falsity of the accusations, noting that the ex-husband's statements were made in the context of a contentious divorce in which both parties filed conflicting declarations. He further argues that admitting the evidence would have led to a mini-trial as to the truth or falsity of the accusations, which would have necessitated undue consumption of time.

The Attorney General has the better argument. As the parties agree, the prior accusations of violence were relevant to impeach Doe's credibility only if they were false. While the ex-husband denied the accusations under penalty of perjury, Doe apparently made the accusations in declarations filed under penalty of perjury in the divorce proceedings. Accordingly, admitting the evidence would have entailed the presentation of conflicting evidence as to the veracity of the accusations, which would have resulted in an undue consumption of time. (See *People v. Tidwell* (2008) 163 Cal.App.4th 1447, 1458 [evidence of prior rape complaints properly excluded under Evidence Code section 352 where presentation of evidence regarding the truth or falsity of the complaints would have been unduly time consuming].) Under these circumstances, we cannot say that the trial court abused its discretion in excluding the evidence.

*Singh*, 2019 WL 6871250, at *6–*10.

> ### a.      Legal Standard

A state court's evidentiary ruling is not subject to federal habeas review unless the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    *See Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Jammal v. Van de Kamp*, 926 F.2d 918, 919-20 (9th

2    Cir. 1991). "[S]tate and federal rulemakers have broad latitude under the Constitution to establish

3    rules excluding evidence from criminal trials." *Holmes v. South Carolina*, 547 U.S. 319, 324

4    (2006) (alteration in original) (citation and internal quotation marks omitted); *see also Montana v.*

5    *Egelhoff*, 518 U.S. 37, 42 (1996) (holding that due process does not guarantee a defendant right to

6    present all relevant evidence). This latitude is limited, however, by a defendant's constitutional

7    rights to due process and to present a defense, rights originating in the Sixth and Fourteenth

8    Amendments. *See Holmes*, 547 U.S. at 324. "While the Constitution prohibits the exclusion of

9    defense evidence under rules that serve no legitimate purpose or that are disproportionate to the

10   ends that they are asserted to promote, well-established rules of evidence permit trial judges to

11   exclude evidence if its probative value is outweighed by certain other factors such as unfair

12   prejudice, confusion of the issues, or potential to mislead the jury." *Id*. at 325-26; *see Montana*,

13   518 U.S. at 43 (holding that exclusion of evidence does not violate Due Process Clause unless "it

14   offends some principle of justice so rooted in the traditions and conscience of our people as to be

15   ranked as fundamental.") (internal citation and quotations omitted). But "at times a state's rules of

16   evidence cannot be mechanistically applied and must yield in favor of due process and the right to

17   a fair trial." *Lunbery v. Hornbeak*, 605 F.3d 754, 762 (9th Cir. 2010) (finding constitutional right

18   to present evidence was violated by California's application of evidentiary rules to exclude

19   hearsay testimony that bore persuasive assurances of trustworthiness and was critical to defense).

20           **b.      Jane Doe's Statement to Boyfriend Before She Left Residence**

21           Petitioner argues that the trial court erred in excluding, under Cal. Evid. Code § 1103, Jane

22   Doe's statement to her boyfriend before she left the residence that she was "going to get laid" for

23   the following reasons. This statement was relevant to the key issue of consent. Because consent

24   was the key issue, the exclusion was prejudicial. Cal. Evid. Code § 1103 is inapplicable here

25   because the statement was not evidence of a specific instance of sexual conduct but was instead

26   evidence of her intent to engage in sex in the near future. Admitting this statement would not run

27   counter to the purpose of Cal. Evid. Code § 1103 because Section 1103 seeks to prevent

28   harassment of victims and to prohibit victims being presented with instances of their prior sexual

18

1    conduct.  Here the statement does not constitute harassment and is not an instance of prior sexual

2    conduct.  If the statement had been admitted, there is a reasonable probability that the jury would

3    have acquitted Petitioner.  ECF No. 27 at 13-24.

4         Respondent argues that Petitioner is not entitled to habeas relief on this claim because

5    Petitioner cannot challenge the state court's determination that "sexual conduct" includes any

6    statement indicating a victim's willingness to engage in sexual activity; because the Supreme

7    Court has not held that a constitutional violation occurs when a state court exercises its discretion

8    to exclude evidence under a valid state evidentiary rule; and because Petitioner has not shown

9    prejudice from the exclusion given the compelling and overwhelming evidence that Jane Doe was

10   kidnapped, drugged and repeatedly raped by Petitioner and Sekhon over the course of 11 hours.

11   Dkt. No. 8-1 at 22-23.

12        The Court has carefully reviewed the record and concludes that the state court's rejection

13   of this claim was neither an unreasonable application of, or contrary to, Supreme Court precedent,

14   nor was it based on an unreasonable determination of the facts in light of the evidence presented in

15   the state court proceeding.  California state courts have construed "sexual conduct," as that term is

16   used in Cal. Evid. Code §§ 782 and1103, to encompass any behavior that indicates the speaker's

17   willingness to engage in sexual activity.  *See People v. Franklin*, 25 Cal. App. 4th 328, 334 (Cal.

18   Ct. App. 1994).  In denying this claim of evidentiary error, the state court applied California state

19   law and found that Jane Doe's "going to get laid" statement qualified as sexual conduct under Cal.

20   Evid. Code §§ 782, 1103.  This Court is bound by the state court's interpretation of state law.

21   *Bradshaw*, 546 U.S. at 76; *see also Estelle*, 502 U.S. at 67–68.  Petitioner has not argued that the

22   evidentiary rules set forth in Evidence Code §§ 782 and 1103 are unconstitutional.  Accordingly,

23   the exclusion of Jane Doe's "going to get laid" statement is unconstitutional only if it violated

24   Petitioner's right to due process or to present a defense.

25        Due process does not guarantee a defendant the right to present all relevant evidence.

26   *Montana*, 518 U.S. at 42.  The right to present a complete defense is not violated every time

27   relevant evidence is excluded, but instead only when the exclusion is arbitrary or disproportionate

28   to the purposes the exclusionary rule applied is designed to serve.  *Holmes*, 547 U.S. at 324.  A

United States District Court
Northern District of California

19

1   violation of the right to present a defense merits habeas relief only if the error was likely to have

2   had a substantial and injurious effect on the verdict.  *See Lunbery v. Hornbeam*, 605 F.3d 754, 762

3   (9th Cir. 2010).  "Only rarely" has the Supreme Court held that the right to present a complete

4   defense was violated by the exclusion of defense evidence under a state rule of evidence.

5       The exclusion of Jane Doe's "going to get laid" statement was not arbitrary or

6   disproportionate to the purposes of Cal. Evid. Code §§ 782 and 1103.  The California Supreme

7   Court has explained the purposes of these rules as follows:

> Evidence of the sexual conduct of a complaining witness is admissible in a prosecution for
> a sex-related offense only under very strict conditions. A defendant may not introduce
> evidence of specific instances of the complaining witness's sexual conduct, for example, in
> order to prove consent by the complaining witness. (Evid. Code, § 1103, subd. (c)(1).)
> Such evidence may be admissible, though, when offered to attack the credibility of the
> complaining witness and when presented in accordance with the following procedures
> under section 782: (1) the defendant submits a written motion "stating that the defense has
> an offer of proof of the relevancy of evidence of the sexual conduct of the complaining
> witness proposed to be presented and its relevancy in attacking the credibility of the
> complaining witness" (*id.*, § 782, subd. (a)(1)); (2) the motion is accompanied by an
> affidavit, filed under seal, that contains the offer of proof (*id.*, subd. (a)(2)); (3) "[i]f the
> court finds that the offer of proof is sufficient, the court shall order a hearing out of the
> presence of the jury, if any, and at the hearing allow the questioning of the complaining
> witness regarding the offer of proof made by the defendant" (*id.*, subd. (a)(3)); and (4) if
> the court, following the hearing, finds that the evidence is relevant under Evidence Code
> section 780 and is not inadmissible under section 352, then it may make an order stating
> what evidence may be introduced by the defendant and the nature of the questions to be
> permitted. (*Id.*, § 782, subd. (a)(4).)
>
> The Legislature's purpose in crafting these limitations is manifest and represents a valid
> determination that victims of sex-related offenses deserve heightened protection against
> surprise, harassment, and unnecessary invasions of privacy. (*People v. Rioz* (1984) 161
> Cal.App.3d 905, 916–917, 207 Cal.Rptr. 903; *accord, Michigan v. Lucas* (1991) 500 U.S.
> 145, 149–150, 111 S.Ct. 1743, 114 L.Ed.2d 205.) By affording victims protection in most
> instances, these provisions also encourage victims of sex-related offenses to participate in
> legal proceedings against alleged offenders. (Letwin, "Unchaste Character": Ideology, and
> the California Rape Evidence Laws (1980) 54 So.Cal. L.Rev. 35, 40 (*Letwin*); *accord*,
> Advisory Com. Note to Fed. Rules Evid., rule 412, 28 U.S.C.) Accordingly, our courts
> have properly exercised the discretion afforded by Evidence Code section 782 "narrowly"
> (*People v. Chandler* (1997) 56 Cal.App.4th 703, 708, 65 Cal.Rptr.2d 687), and we
> emphasize that "[g]reat care must be taken to insure that this exception to the general rule
> barring evidence of a complaining witness' prior sexual conduct ... does not impermissibly
> encroach upon the rule itself and become a 'back door' for admitting otherwise
> inadmissible evidence." (*People v. Rioz, supra*, 161 Cal.App.3d at pp. 918–919, 207
> Cal.Rptr. 903.)

26  *People v. Fontana*, 49 Cal. 4th 351, 363 (Cal. 2010).  The trial court's exclusion of Jane Doe's

27  "going to get laid" statement fell squarely within the purposes of Cal. Evid. Code §§ 782 and

28  1103.  The trial court excluded a specific instance of Jane Doe's "sexual conduct," as defined by

1    the California courts, that was being introduced to prove consent by the complaining witness, even

2    if defense counsel sought to admit the statement for the purpose of attacking Jane Doe's

3    credibility.

4        Even if the exclusion of this statement violated the Constitution, it did not have "a

5    substantial and injurious effect" on the verdict.  *See Lunbery*, 605 F.3d at 762.  There was

6    overwhelming evidence supporting the jury's guilty verdict.  Jane Doe's testimony that she did not

7    consent to the sexual activity was supported by, among other things, evidence that she showed

8    signs of being drugged and evidence that she did not show signs of intoxication when interviewed

9    by the paramedics, police officers and nurse shortly after the incident.  RT 532-544, 630, 532-38,

10   670, 740-42, 811, 859, 860-61, 874, 911-12, 915, 919, 944, 945, 951, 1101-02, 1123, 1128-32.

11   The state court's decision to exclude the statement was based on a reasonable determination of the

12   facts in light of the evidence presented in the state court proceeding, and was not an unreasonable

13   application of, or contrary to, Supreme Court precedent.  Habeas relief is denied on this claim.

c.    **Expert Testimony Regarding Alcohol-Induced Blackouts**

15       Petitioner argues that the exclusion of expert testimony regarding alcohol-included

16   blackouts violated due process because it would have educated the jury as to the difference

17   between alcohol-induced blackouts and unconsciousness; because a person in an alcohol-induced

18   blackout might appear to be engaging in voluntary behavior; because alcohol-induced blackouts

19   compromise a person's ability to accurately recall events that occurred during the blackout;

20   because Jane Doe's blood alcohol content indicated an alcohol-induced blackout rather than being

21   unconscious; because the subject matter was not within the knowledge of a layperson; and because

22   the expert's failure to account for GHB in Jane Doe's system did not justify exclusion of the

23   expert because the issue could have been addressed on cross-examination.  Dkt. No. 27 at 24-28.

24       Respondent argues that the state court's rejection of this claim was not contrary to clearly

25   established Federal law because the Supreme Court has not clearly established that a constitutional

26   violation arises when a state trial court exercises its discretion to exclude evidence under a valid

27   state evidentiary rule or clearly established that a defendant has a broad right to present evidence

28   bearing on a witness's credibility; because there was no evidence at trial that Jane Doe had an

United States District Court
Northern District of California

1   alcohol-induced blackout during her time with Petitioner and Sekhon; because there was no

2   evidence at trial that Jane Doe was conscious and consented to sex with Petitioner and simply

3   forgot because of alcohol-induced amnesia; because there was evidence that Petitioner drugged

4   Jane Doe, causing her to become physically incapacitated and lose consciousness, and then raped

5   her as she lapsed in and out of consciousness; and because Petitioner was not prejudiced by the

6   exclusion of this expert testimony given the lack of evidence supporting Jane Doe suffering an

7   alcohol-induced blackout and the evidence supporting the theory that Jane Doe fell unconscious

8   after being drugged and objected when she awoke to Petitioner having sex with her.  Dkt. No. 8-1

9   at 26-27.

10          The record supports the state court's determination that there was insufficient evidence

11  suggesting that Jane Doe was in an alcohol-induced blackout at the time of the assaults, so as to

12  warrant the exclusion of expert testimony based on that premise.  Although Jane Doe's BAC level

13  was inconsistent with her recollection of what she drank during the relevant time period, the police

14  officers and nurse who interacted with Jane Doe during the relevant time period reported that Jane

15  Doe did not show any signs of alcohol intoxication.  RT 859, 872, 911-912, 919, 944, 945, 951.

16  There was also testimony that a BAC level of 0.21, while high, would not incapacitate a person

17  who drank regularly, which the evidence established was true of Jane Doe.  RT 431.  In addition,

18  Jane Doe testified that she had never had an alcohol-induced backout despite her heavy drinking.

19  RT 647-48.  Also, as discussed above, there was significant evidence presented from which a jury

20  could reasonably conclude that Jane Doe fell unconscious after being drugged, and did not consent

21  to sex with Petitioner and Sekhon.  The exclusion of expert testimony regarding alcohol-induced

22  blackouts did not have "a substantial and injurious effect" on the verdict here because there was

23  significant evidence that Jane Doe was not suffering from an alcohol-induced blackout and had

24  been drugged.  *See Lunbery*, 605 F.3d at 762.  The state court's decision to exclude this expert

25  testimony was based on a reasonable determination of the facts in light of the evidence presented

26  in the state court proceeding, and was not an unreasonable application of, or contrary to, Supreme

27  Court precedent.  Habeas relief is denied on this claim.

28  //

United States District Court
Northern District of California

22

United States District Court
Northern District of California

#### d.      Jane Doe's Accusation Against Ex-Husband

Petitioner argues that the exclusion of Jane Doe's accusation that her ex-husband, Joel Levya, head-butted her violated due process.  He argues that the accusation was directly relevant to Jane Doe's credibility in part because she made a similar accusation against Petitioner.  He argues that the accusation should have been admitted because the Court admitted a similar accusation Jane Doe's ex-boyfriend made against her; because state law holds that prior false accusations of criminal behavior are relevant; because it would be only a minor inconvenience to determine the veracity of her accusation against Levya based on affidavits from Levya stating that her accusation was false; and because Jane Doe has twice falsely accused men of violent crimes against her.  Dkt. No. 27 at 28-35.  Respondent argues that the state court's rejection of this claim is not contrary to clearly established Federal law because the Supreme Court has not clearly established that a constitutional violation arises when a state trial court exercises its discretion to exclude evidence under a valid state evidentiary rule or clearly established that a defendant has a broad right to present evidence bearing on a witness's credibility; because the state court reasonably held that admission of this evidence would require a mini-trial regarding the ex-husband's treatment of Jane Doe during their marriage, which would consume considerable time and divert from the key issues; and because Petitioner cannot show that he was prejudiced by the exclusion of this evidence since there was ample evidence challenging Jane Doe's credibility and overwhelming evidence of Petitioner's guilt, including the evidence corroborating Jane Doe's account.  Dkt. No. 8-1 at 28-30.

The state court's decision to exclude Jane Doe's accusation against her ex-husband was based on a reasonable determination of the facts in light of the evidence presented in the state court proceeding.  As the state court noted, there were competing affidavits regarding the veracity of Jane Doe's accusation of domestic violence.  The state court reasonably concluded that admitting Levya's affidavit that Jane Doe had falsely accused him of domestic violence in their divorce proceedings would have required the admission of other evidence, including Jane Doe's competing affidavit, resulting in a mini-trial on a collateral issue and undue consumption of time.  In addition, excluding this accusation did not prevent or significantly limit Petitioner from

23

attacking Jane Doe's credibility.  Petitioner challenged Jane Doe's credibility in numerous ways, including introducing a false accusation she made against an ex-boyfriend and false statements made under oath about her sobriety; cross-examining extensively as to the accuracy of her recollection of the relevant events; presenting evidence to support an argument that she was intoxicated during the relevant time period and therefore unable to accurately recall the relevant events; and impeaching her with statements she made to law enforcement that contradicted or were inconsistent with her in-court testimony.  RT 53-61, 624, 650-52, 689-92, 718, 773, 775-76.  Finally, as also discussed *supra*, there was significant evidence presented from which a jury could reasonably conclude that Jane Doe was credible when she testified that she did not consent to sex with Petitioner and Sekhon.

The state court's decision to exclude Jane Doe's accusation against her ex-husband was also a reasonable application of, and not contrary to, Supreme Court precedent.  The Supreme Court has held that evidentiary rules intended to focus the fact-finder on the most important facts and to conserve judicial resources by avoiding mini-trials on collateral issues, as was the case here, are constitutional.  *Nevada*, 569 U.S. at 509.  Because the exclusion of this accusation was not arbitrary or disproportionate to the purposes of the exclusionary rule, there was no due process violation.  *Holmes*, 547 U.S. at 324.  Also, even if the exclusion were erroneous, federal habeas relief lies only where the error was likely to have had a substantial and injurious effect on the verdict, *see Lunbery*, 605 F.3d at 762, which is not the case here, in light of the totality of the record and the strength of the prosecution's case.  Habeas relief is denied on this claim.

### 3.    Ineffective Assistance of Counsel

Petitioner argues that counsel was ineffective for failing to seek admission of Jane Doe's statement to her boyfriend "I'm going to get laid" as relevant to the key issue of consent; and that Petitioner was prejudiced by trial counsel's failure.  Dkt. No. 27 at 15-19.  Respondent argues that trial counsel was not ineffective in framing his argument in terms of Jane Doe's credibility for the following reasons.  Cal. Evid. Code § 1103 prohibited the admission of Jane Doe's statement for the purpose of proving consent, but Cal. Evid. Code § 782 potentially allowed the admission for the purposes of attacking Jane Doe's credibility.  The state court reasonably concluded that

1   counsel's argument did not prejudice Petitioner because, in ruling on the motion, the trial court

2   recognized that the statement was being offered as evidence of Jane Doe's consent.  There is no

3   reasonable probability that the jury would have returned a more favorable verdict if this evidence

4   had been admitted, in light of the substantial evidence that Jane Doe did not consent.  Dkt. No. 8-1

5   at 23-34.

6          The California Court of Appeal denied the claim as follows:

7          *d. Trial Counsel Did Not Render Ineffective Assistance*
           Alternatively, defendants contend that trial counsel was ineffective in failing to seek
8          admission of the "going to get laid" statement on the ground that it was relevant to whether
           Doe consented to sexual intercourse with them. That claim fails because defendants cannot
9          establish either that counsel's performance was deficient or that they suffered prejudice for
           the reasons discussed below.

10
           "Under both the Sixth Amendment to the United States Constitution and article I, section
11         15, of the California Constitution, a criminal defendant has the right to the assistance of
           counsel." (*People v. Ledesma* (1987) 43 Cal.3d 171, 215.) To prevail on a claim of
12         ineffective assistance of counsel, a criminal defendant must establish both that his counsel's
           performance was deficient and that he suffered prejudice. (*Strickland v. Washington* (1984)
13         466 U.S. 668, 687 (*Strickland*).) The deficient performance component requires a showing
           that "counsel's representation fell below an objective standard of reasonableness" "under
14         prevailing professional norms." (*Id.* at p. 688.) "If the record 'sheds no light on why counsel
           acted or failed to act in the manner challenged,' an appellate claim of ineffective assistance
15         of counsel must be rejected 'unless counsel was asked for an explanation and failed to
           provide one, or unless there simply could be no satisfactory explanation.'" (*People v.
16         Ledesma* (2006) 39 Cal.4th 641, 746.) With respect to prejudice, a defendant must show
           "there is a reasonable probability"—meaning "a probability sufficient to undermine
17         confidence in the outcome"—"that, but for counsel's unprofessional errors, the result of the
           proceeding would have been different." (*Strickland, supra*, at p. 694.)

18
           Defense counsel argued that the statement was relevant to "Ms. Doe's state of mind when
19         she met Mr. Singh, her anger with [her boyfriend], and her motive to carry out her stated
           threat to [her boyfriend] with Mr. Singh and Mr. Sekhon." The "stated threat" was that she
20         was "going to get laid." Therefore, defense counsel essentially argued that the statement
           proved Doe consented to sex with defendants without using the word "consent."
21
           Defense counsel's decision to characterize the evidence as relevant to credibility, not
22         consent, was hardly deficient given the applicable law. As discussed above, Evidence Code
           section 1103, subdivision (c)(1) prohibits the use of evidence of the complaining witness's
23         sexual conduct to prove consent. Evidence Code section 782 sets forth an exception to that
           rule for evidence of sexual conduct of the complaining witness offered to attack his or her
24         credibility. In view of the applicable law, defense counsel was not deficient in arguing that
           the statement was relevant to Doe's credibility as opposed to consent. Indeed, had counsel
25         offered the statement to prove consent and not to attack Doe's credibility, the court certainly
           would have excluded it under Evidence Code section 1103, subdivision (c)(1).
26
           Regardless of how the evidence was characterized, it is clear from the record that the court
27         understood its potential relevance to the issue of consent. The prosecutor took the position
           that defendants were seeking to use the statement to prove consent. And the court mentioned
28         consent in its ruling. Therefore, defendants cannot show that they suffered any prejudice

from defense counsel's failure to explicitly seek admission of the statement on the ground that it was relevant to the issue of consent.

*Singh*, 2019 WL 6871250, at \*8-\*9.

### a.   Legal Standard

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance of counsel, but effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.*  In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, a petitioner must establish two things.

First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Id.* at 687–88.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* at 687.  The relevant inquiry is not what defense counsel could have done, but rather whether the choices made by defense counsel were reasonable. *See Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998).  Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689.  Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

A federal habeas court considering an ineffective assistance claim need not address the prejudice prong of the *Strickland* test "if the petitioner cannot even establish incompetence under the first prong." *Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998).  Conversely, the court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697.

United States District Court
Northern District of California

1    The *Strickland* framework for analyzing ineffective assistance of counsel claims is

2    considered to be "clearly established Federal law, as determined by the Supreme Court of the

3    United States" for the purposes of 28 U.S.C. § 2254(d) analysis.  *See Cullen v. Pinholster*, 563

4    U.S. 170, 189 (2011).  A "doubly" deferential judicial review is appropriate in analyzing

5    ineffective assistance of counsel claims under § 2254.  *See id.* at 190; *Harrington*, 562 U.S. at 105

6    (same); *Premo v. Moore*, 562 U.S. 115, 122 (2011) (same).  The general rule of *Strickland*, i.e., to

7    review a defense counsel's effectiveness with great deference, gives the state courts greater leeway

8    in reasonably applying that rule, which in turn "translates to a narrower range of decisions that are

9    objectively unreasonable under AEDPA."  *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir.

10   2010).  When § 2254(d) applies, "the question is not whether counsel's actions were reasonable.

11   The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s

12   deferential standard."  *Harrington*, 562 U.S. at 105.

13                          **b.      Analysis**

14       Petitioner has failed to establish incompetence under the first prong.  Trial counsel would

15   not have been successful in seeking to have Jane Doe's "I'm going to get laid" statement admitted

16   as evidence of consent because Cal. Evid. Code § 1103(c)(1) clearly prohibits admission of such

17   statements for that purpose.  In other words, Petitioner is arguing that trial counsel should have

18   made a legally unsupported argument.  The United States Supreme Court has never required

19   defense counsel to pursue every nonfrivolous claim or defense, regardless of its merit, viability, or

20   realistic chance of success.  *Knowles v. Mirzayance*, 556 U.S. 111, 123, 125, 127 (2009).

21   Abandoning a defense that has "almost no chance of success" is therefore reasonable, even if there

22   is "nothing to lose" by preserving the defense.  *Id.* at 123.  Moreover, although defense counsel

23   stated that he sought admission of this statement as relevant to credibility, it was clear to both

24   defense counsel and the trial court that defense counsel sought to admit this statement in support

25   of a consent defense.  *See, e.g.*, *Singh*, 2019 WL 6871250, at *9 ("defense counsel essentially

26   argued that the statement proved Doe consented to sex with defendants without using the word

27   'consent'").   The trial court excluded the evidence on the grounds that the jury could potentially

28   interpret the statement as consent to the sexual acts.  RT 160.  Trial counsel's decision not to seek

United States District Court
Northern District of California

27

1    admission of this statement as relevant to consent was not deficient performance.  And because the

2    trial court would have excluded the statement even if trial counsel sought to admit it to prove

3    consent, there was no prejudice to Petitioner for failing to seek admission on this particular

4    ground.  The state court's denial of this claim was not based on an unreasonable determination of

5    the facts in light of the evidence presented at trial.  Nor was the denial of this claim contrary to, or

6    an unreasonable application of, clearly established Federal law, as determined by the Supreme

7    Court of the United States.  Habeas relief is denied on this claim.

8              **4.       Evidence of Jane Doe's Methamphetamine-Related Arrest**

9         Petitioner argues that the trial court's ruling that he could not impeach Jane Doe's

10   credibility with her involvement in a drug offense a few months prior trial violated his Sixth

11   Amendment right to cross-examine her.[5]  He argues that the arrest was a crime of moral turpitude

12   and that Jane Doe was motivated to claim that she suffered kidnapping and rape to curry favor

13   with the prosecutor in the criminal case against her arising out of the methamphetamine-related

14   arrest.  Respondent argues that this claim should be dismissed as unexhausted.  In the alternative,

15   Respondent argues that this claim fails on the merits because this is not a case where Petitioner

16   was denied all opportunity to impeach Jane Doe's credibility and because the limitation on cross-

17   examination did not have a substantial and injurious effect on the jury's verdict.  Dkt. No. 8-1 at

18   34-36.  Petitioner does not address this claim in his traverse.

19        On direct appeal, Petitioner argued that the trial court erred in excluding evidence that Jane

20   Doe had been arrested for being under the influence of methamphetamine a few months before the

21   trial because this evidence was relevant to bias and violated his Sixth Amendment right to cross-

22   examine Jane Doe.  The California Court of Appeal denied the claim as follows:

23            *5. Evidence of Doe's Arrest for Being Under the Influence of Methamphetamine Three*
             *Months Before Trial*

24        Doe was arrested for being under the influence of methamphetamine, in violation of Health
          and Safety Code section 11550, in July 2016, a few months before trial. Defendants moved

25        to impeach Doe with the incident, arguing it was relevant to her ability to perceive or
          recollect events, evinced moral turpitude, supported an inference that she had a bias to testify

26

27   _____

     [5] Petitioner also argued that the trial court abused its discretion under state law in excluding this
28   evidence.  Errors of state law do not state claims for federal habeas relief.  *Estelle*, 502 U.S. at 67–
     68.

                                                      28

United States District Court
Northern District of California

consistently with her prior statements to avoid an adverse charging decision by the prosecutor, and supported an inference that she consumed GHB voluntarily during her encounter with defendants. The prosecutor moved in limine to exclude evidence of the arrest and methamphetamine use. The prosecutor noted that, while Doe was found in a hotel room with a significant amount of methamphetamine, her male companion said the drugs were his and he had been convicted of possession for sale based on the incident. The trial court excluded the evidence, reasoning that there was insufficient evidence of moral turpitude and noting that the instant case did not involve methamphetamine.

Defendants challenge that ruling on appeal, saying it was error because Doe was aiding and abetting the possession of methamphetamine for sale, a crime of moral turpitude, and that the evidence was relevant to bias. Defendants say the exclusion of the evidence was an abuse of discretion under state law and violated their Sixth Amendment right to cross-examine the witnesses against them.

### a. Factual Background

On July 8, 2016, police contacted a man who was driving Doe's car. In the car, they found loose baggies, nearly five grams of methamphetamine, and a methamphetamine pipe. The man was staying in a hotel room booked under Doe's name. Police went to the room where they found Doe, who exhibited signs of methamphetamine use and admitted using methamphetamine the day prior. When police asked Doe about the presence of narcotics for sale, she pointed to a black case, which was found to contain more than 20 grams of methamphetamine, empty syringes, and a rubber strap. Doe was arrested for being under the influence of methamphetamine but was not charged with any crime.

### b. Doe's Prior Conduct did not Involve Moral Turpitude

"A witness may be impeached with any prior conduct involving moral turpitude whether or not it resulted in a felony conviction, subject to the trial court's exercise of discretion under Evidence Code section 352. [Citations.]" (*People v. Clark* (2011) 52 Cal.4th 856, 931, fn.omitted (*Clark*).) ""Crimes involve moral turpitude when they reveal dishonesty, a '"general readiness to do evil,"" [citation], or "moral laxity of some kind." [Citation.]' [Citation.]" (*People v. Bedolla* (2018) 28 Cal.App.5th 535, 551.) "Whether an offense constitutes a crime of moral turpitude is a question of law." (*People v. Maestas* (2005) 132 Cal.App.4th 1552, 1556.)

Our Supreme Court has held that "simple possession of [a controlled substance] does not necessarily involve moral turpitude [citations], [but that] possession for sale does ...." (*People v. Castro* (1985) 38 Cal.3d 301, 317.) The latter involves moral turpitude because the crime evinces an "intent to corrupt others." (*Ibid.*) Thus, the distinction is that one who simply possesses a controlled substance "most likely exposes only himself to harm with his drug use, [whereas] possession for sale exposes others to this harm." (*People v. Rivera* (2003) 107 Cal.App.4th 1374, 1381.)

Defendants argue that the incident involved moral turpitude on Doe's part because she aided and abetted the possession of drugs for sale, which is a crime involving moral turpitude. "In order to be guilty on a theory of aiding and abetting, a defendant must have (1) known the unlawful purpose of the perpetrator[;] (2) acted with the intent or purpose of committing, encouraging or facilitating the commission of the offense[;] and (3) by act or advice, aided, promoted, encouraged or instigated the commission of the crime. [Citations.] Factors relevant to a determination of whether defendant was guilty of aiding and abetting include: presence at the scene of the crime, companionship, and conduct before and after the offense. [Citations.]" (*People v. Singleton* (1987) 196 Cal.App.3d 488, 492.) "'Mere presence at the scene of a crime which does not itself assist its commission or mere knowledge that a crime is being committed and the failure to prevent it does not amount to aiding and abetting.' [Citations.]" (*People v. Pettie* (2017) 16 Cal.App.5th 23, 57.)

The record does not establish that Doe had the requisite specific intent to aid or abet the crime of possession of drugs for sale. Accordingly, the trial court did not err in concluding that her conduct did not involve moral turpitude.

### c. Even if Doe's Prior Conduct Supported an Inference of Motive to Lie, its Exclusion was not Prejudicial State Law Error

"The existence or nonexistence of a bias, interest, or other motive" generally is admissible, as it is relevant to witness credibility. (Evid. Code, § 780, subd. (f).) Defendants maintain the drug arrest gave Doe a motive to tailor her testimony to aid the prosecutor and thereby avoid charges related to the incident. As noted above, we review the exclusion of impeachment evidence for abuse of discretion. (*Clark, supra*, 52 Cal.4th at p. 932.) And any error is subject to the standard of prejudice applicable to state law error set forth in *Watson*. (*People v. Cudjo* (1993) 6 Cal.4th 585, 611.)

Even assuming the trial court erred in excluding evidence of the drug arrest because it supported an inference of bias in favor of the prosecution, defendants fail to show they suffered prejudice. Doe was cooperating with the prosecution prior to her arrest. She reported the crimes immediately and testified at the preliminary hearing, which took place before her arrest. Defendants identify no significant inconsistencies between Doe's preliminary hearing testimony and her trial testimony. Accordingly, it is not reasonably probable that jurors would have concluded that Doe's testimony was biased and not credible had they learned of the arrest. It follows that it is not reasonably probable that defendants would have received a more favorable result had that evidence been admitted.

### d. Constitutional Error

Defendants contend the exclusion of the drug arrest violated their federal constitutional right to cross-examine Doe. "'"[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby, "to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness."' [Citation.] However, not every restriction on a defendant's desired method of cross-examination is a constitutional violation. Within the confines of the confrontation clause, the trial court retains wide latitude in restricting cross-examination that is repetitive, prejudicial, confusing of the issues, or of marginal relevance.... Thus, unless the defendant can show that the prohibited cross-examination would have produced 'a significantly different impression of [the witness['s]] credibility' [citation], the trial court's exercise of its discretion in this regard does not violate the Sixth Amendment. [Citation.]' [Citation.]" (*People v. Dalton* (2019) 7 Cal.5th 166, 217.)

Evidence of Doe's drug arrest would not have produced a significantly different impression of Doe's credibility. As noted above, there was no indication that she altered her account of events to be more favorable to the prosecution after the arrest. And her mere use of methamphetamine was not relevant to her credibility generally. Accordingly, defendants have not established a Sixth Amendment violation.

*Singh*, 2019 WL 6871250, at \*10-\*12.

### a.     Exhaustion

28 U.S.C. § 2254(b) provides that habeas relief may not be granted unless a petitioner has exhausted his state remedies.  28 U.S.C. § 2254(b)(1)(A).  Section 2254(b)(1)(A) requires that the petitioner's contentions be fairly presented to the state courts and disposed of on the merits by the

1    highest state court.  *See James v. Borg*, 24 F.3d 20, 24 (1994).  Although Petitioner raised this

2    claim on direct appeal, he omitted this claim in his petition for review to the California Supreme

3    Court.  Dkt. No. 26 ("Answer"), Exs. 6, 11 (Dkt. No. 26-4 at 3-61, 217-92).  This claim is

4    therefore unexhausted.  *Wooten v. Kirkland*, 540 F.3d 1019, 1025 (9th Cir. 2008) (claim not

5    exhausted where presented to California appellate court but not set forth in petition for review

6    before California Supreme Court).  Habeas relief may not be granted on this claim.  28 U.S.C.

7    § 2254(b)(1)(A).  Regardless, as discussed below, this claim also fails on the merits.

8                    **b.      Confrontation Clause Claim**

9                         **1)      Legal Standard**

10           The Confrontation Clause of the Sixth Amendment provides that in criminal cases the

11   accused has the right to "be confronted with the witnesses against him."  U.S. Const. amend. VI.

12   The federal confrontation right applies to the states through the Fourteenth Amendment.  *Pointer*

13   *v. Texas*, 380 U.S. 400, 403 (1965).  The ultimate goal of the Confrontation Clause is to ensure

14   reliability of evidence, but it is a procedural rather than a substantive guarantee.  *Crawford v.*

15   *Washington*, 541 U.S. 36, 61 (2004).  It commands, not that evidence be reliable, but that

16   reliability be assessed in a particular manner: by testing in the crucible of cross-examination.  *Id*.

17           The Confrontation Clause "guarantees an *opportunity* for effective cross-examination, not

18   cross-examination that is effective in whatever way, and to whatever extent, the defense might

19   wish."  *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam).  Accordingly, "trial judges

20   retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits

21   on such cross-examinations based on concerns about, among other things, harassment, prejudice,

22   confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally

23   relevant."  *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).  The Supreme Court "has never

24   held that the Confrontation Clause entitles a criminal defendant to introduce *extrinsic evidence* for

25   impeachment purposes."  *Nevada*, 569 U.S. at 512 (emphasis in original) (criticizing Court of

26   Appeals for "elid[ing] the distinction between cross-examination and extrinsic evidence by

27   characterizing the cases as recognizing a broad right to present 'evidence bearing on [a witness']

28   credibility").

A limitation on cross-examination does not violate the Confrontation Clause unless it limits relevant testimony and prejudices the defendant, and denies the jury sufficient information to appraise the biases and motivations of the witnesses. *United States v. Urena*, 659 F. 3d 903, 907-908 (9th Cir. 2011). Accordingly, to determine whether a defendant's Sixth Amendment right of confrontation has been violated by the exclusion of evidence on cross-examination, a court must inquire whether the evidence was relevant; whether there were other legitimate interests outweighing the defendant's interests in presenting the evidence; and whether the exclusion of evidence left the jury with sufficient information to assess the credibility of the witness. *See United States v. Beardslee*, 197 F.3d 378, 383-84 (9th Cir.), *amended*, 204 F.3d 983 (9th Cir. 2000)

Confrontation Clause claims are subject to harmless error analysis. *United States v. Nielsen*, 371 F.3d 574, 581 (9th Cir. 2004) (post-*Crawford* case). Habeas relief is proper only if the Confrontation Clause error by the state courts had a substantial and injurious effect or influence in determining the jury's verdict. *See Hernandez v. Small*, 282 F.3d 1132, 1144 (9th Cir. 2002).

### 2) Analysis

The exclusion of Jane Doe's methamphetamine arrest did not violate the Confrontation Clause because it did not deprive the jury of sufficient information to appraise Jane Doe's biases and motivations. This Court is bound by the state court's factual finding that there was insufficient evidence that the methamphetamine-related arrest was for a crime of moral turpitude. In addition, as Respondent correctly points out, the methamphetamine arrest had limited impeachment value and limited probative value with respect to bias and motivation, because the argument that Jane Doe was lying about the rapes and kidnapping in order to curry favor with the prosecutor in her criminal case arising out of the methamphetamine-related arrest was not supported by the record. From the day of the rape to trial, Jane Doe consistently maintained that the sex was nonconsensual and that she was moved without her consent during the course of the rapes. Upon being pushed out of the cab, Jane Doe told the initial witnesses that she had been raped, and then made the same statement to both police officers and medical personnel. RT 811,

860, 874, 915, 943.  Her insistence that she did not consent did not change after her arrest.

Finally, the exclusion of this evidence did not have a substantial and injurious effect or influence

on the verdict.  As discussed *supra*, there was significant evidence presented from which a jury

could reasonably conclude that Jane Doe was credible when she testified that she did not consent

to sex with Petitioner and Sekhon.  Habeas relief is denied on this claim.

### IV.  Certificate of Appealability

The federal rules governing habeas cases brought by state prisoners require a district court

that issues an order denying a habeas petition to either grant or deny therein a certificate of

appealability.  *See* Rules Governing § 2254 Case, Rule 11(a).

A judge shall grant a certificate of appealability "only if the applicant has made a

substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the

certificate must indicate which issues satisfy this standard.  *Id.* § 2253(c)(3).  "Where a district

court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c)

is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district

court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S.

473, 484 (2000).

Here, Petitioner has not made such a showing, and, accordingly, a certificate of

appealability will be denied.

### V. CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is DENIED, and a

certificate of appealability is DENIED.

The Clerk shall enter judgment in favor of Respondent and close the file.

**IT IS SO ORDERED.**

Dated:  6/17/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California